STATE v. BAKER

[112 N.C. App. 410 (1993)]

STATE OF NORTH CAROLINA v. JERRY GLENN BAKER, DEFENDANT

No. 928SC259

(Filed 2 November 1993)

1. **Criminal Law § 106 (NCI4th)— witnesses' statements made available to defendant—procedure—defendant not prejudiced**

    Though the trial judge, in conducting an *in camera* review of witnesses' statements for the purpose of determining whether the portions of the statements relevant to the subject matter had already been provided to defendant, should have reviewed these statements immediately after direct examination so that defendant could have the statements for cross-examination, defendant was not prejudiced by the actions of the judge, since it appeared from the record that defendant had been provided all relevant statements of witnesses in compliance with N.C.G.S. § 15A-903.

    **Am Jur 2d, Depositions and Discovery § 428.**

    **Right of defendant in criminal case to inspection of statement of prosecution's witness for purposes of cross-examination or impeachment. 7 ALR3d 181.**

2. **Conspiracy § 18 (NCI4th)— conspiracy not merged with substantive offense—sufficiency of evidence**

    The trial court did not err by denying defendant's motion to dismiss a charge of conspiracy to possess cocaine on the ground the conspiracy charge merged into the trafficking by possession charge or on the ground of insufficiency of the evidence since a conspiracy charge, though it may merge into a continuing criminal enterprise charge, does not merge into the substantive offense of possession, and testimony of a coconspirator was sufficient to withstand defendant's motion to dismiss on the ground of insufficiency of evidence of conspiracy.

    **Am Jur 2d, Conspiracy §§ 5-9.**

3. **Narcotics, Controlled Substances, and Paraphernalia § 196 (NCI4th)— trafficking in cocaine—felony possession of cocaine—no instruction on lesser offense required**

    In a prosecution of defendant for trafficking in cocaine by possession of more than 200 but less than 400 grams and

STATE v. BAKER

[112 N.C. App. 410 (1993)]

conspiring to commit the felony of possession of at least 200 but less than 400 grams of cocaine where the tape of a conversation at defendant's home contained discussion of defendant's purchase of approximately 250 grams of cocaine, no instructions on lesser included offenses was proper.

**Am Jur 2d, Drugs, Narcotics and Poisons § 47.5.**

4. **Evidence and Witnesses § 1623 (NCI4th)— tape recorded conversation—authentication**

A tape of defendant's conversation with his coconspirators was properly authenticated where the coconspirators both identified the tape and listened to it, testifying that the tape was a fair and accurate recordation of their conversation with defendant. N.C.G.S. § 8C-1, Rule 901.

**Am Jur 2d, Evidence § 436.**

Appeal by defendant from order entered 23 September 1991 by Judge James R. Strickland in Wayne County Superior Court. Heard in the Court of Appeals 30 March 1993.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Floyd M. Lewis, for the State.*

*Dees, Smith, Powell, Jarrett, Dees & Jones, by John W. Dees and Rose Vaughn Williams, for defendant-appellant.*

JOHNSON, Judge.

Defendant Jerry Glenn Baker was indicted on 24 June 1991 in a two count bill of indictment on the charges of trafficking in cocaine by possessing at least 200 grams but less than 400 grams of cocaine and conspiring to commit the felony of possession of at least 200 grams but less than 400 grams of cocaine. A jury found defendant not guilty on the charge of trafficking in cocaine by possessing at least 200 grams but less than 400 grams of cocaine, and guilty on the charge of conspiring to commit the felony of possession of at least 200 grams but less than 400 grams of cocaine. Defendant filed notice of appeal to this Court.

Evidence presented by the State tended to show the following: Witnesses Harry Robert Gautier and Donald Ray Thompson had histories of dealing in illegal drugs; they formed a partnership in 1988 for the purpose of buying and selling cocaine, splitting

STATE v. BAKER

[112 N.C. App. 410 (1993)]

the profits. Thompson began dealing in drugs with defendant in early 1989 when Thompson took defendant some half ounces[1] of cocaine, and defendant picked up half ounces of cocaine at Thompson's house. Gautier met defendant in the spring of 1989 at Thompson's house, where he told defendant that he and Thompson were partners in the cocaine business. During the course of this conversation, defendant told Gautier that he figured Gautier and Thompson were partners, and Thompson sold defendant a half ounce of cocaine. In June of 1989, Gautier delivered a half ounce of cocaine to defendant's house.

Gautier spoke with defendant in late 1989 and told defendant that he and Thompson were no longer dealing in small amounts of cocaine and that defendant should contact Hugh Earl Stroud if he wanted small amounts of cocaine.

Gautier saw defendant at the County Line Grocery sometime in early November 1989. At that time, Gautier told defendant that Gautier would sell defendant a quarter kilogram[2] of cocaine; although defendant did not have the total amount of the purchase ($8,500.00) up front, Gautier offered to front the cocaine to defendant. Later in November or early December, Gautier delivered the quarter kilogram of cocaine to defendant's house. Defendant paid Gautier an initial $2,000.00 for this cocaine at the time it was delivered, and over a period of several dates paid the balance due to Gautier. Thompson was not present when defendant made the deal to purchase this cocaine.

In early 1990, Gautier and Thompson were arrested and charged with various drug-related offenses. Gautier and Thompson testified that they agreed to provide substantial assistance to the State in return for special consideration for their assistance at their sentencing hearing. As part of this assistance, Thompson and Gautier went to visit with defendant on 30 May 1990, at which time Thompson wore a concealed tape recorder. While at defendant's home, Thompson, Gautier and defendant conversed concerning drug transactions, including the purchase of the quarter kilogram of cocaine which defendant made from Gautier and also concerning the possibility of defendant getting Thompson and Gautier some cocaine from Bill Moyers. Thompson and Gautier later delivered this tape to

1. A half ounce is approximately fourteen (14) grams.

2. A quarter kilogram is approximately 250 grams.

Officer Jerry Best of the Wayne County Sheriff's Department, at which time Thompson and Gautier initialed and dated the tape.

At trial, Thompson and Gautier both identified the tape and listened to it, testifying that the tape was a fair and accurate recordation of the conversation they held with defendant. Bill Moyers also testified at trial for the State.

Officer Best testified the tape was the one used to record the conversation between the defendant, Thompson and Gautier. He further testified the tape had been in his exclusive care and custody from 30 May 1990 until the date of trial.

A *voir dire* hearing was held during which Steven G. Surratt from the North Carolina State Bureau of Investigation gave testimony concerning the authentication of a transcript of a tape. Surratt testified the transcript presented by the State of the taped conversation between the defendant, Thompson and Gautier was a fair and accurate rendition.

The tape was played for the jury and the jury was provided with copies of the transcript in order to follow the tape. The defendant did not introduce any evidence.

In response to defendant's pre-trial motions for discovery of his statements in possession of the State, defendant was given a one page statement of four paragraphs. Each paragraph was a separate statement by different persons (Thompson, Gautier, and two statements by Moyers) as to statements made by the defendant or involving the presence of the defendant. During jury selection, the State gave defendant excerpts from grand jury testimony given by these witnesses as to these statements. At trial, these witnesses testified to the contents of these statements as well as other statements.

A *voir dire* hearing was held at trial on defendant's request to determine whether there existed statements of defendant which had not already been provided to defendant and which should have been provided pursuant to North Carolina General Statutes § 15A-903(a)(2) (1988). The trial court found "as a matter of law . . . the District Attorney, in compliance with G. S. 15A-903(a)(2) of the North Carolina General Statutes has complied with the statute in divulging the substance of any oral statements relative to the subject matter of the case made by the defendant, regardless of to whom the statement is made." Later in the proceeding, the

trial judge entertained a motion *in camera* by defendant for discovery of all of the statements of witnesses Gautier, Thompson and Moyers which were made to the Wayne County Grand Jury.

**[1]** Defendant first argues the trial court committed prejudicial error when it denied defendant's repeated discovery requests which were made at trial pursuant to North Carolina General Statutes § 15A-903 on the grounds that defendant, by the clear wording of the discovery statute, was entitled to the material requested.

North Carolina General Statutes § 15A-903 provides in pertinent part:

(a) Statement of Defendant.— Upon motion of a defendant, the court must order the prosecutor:

. . .

(2) To divulge, in written or recorded form, the substance of any oral statement relevant to the subject matter of the case made by the defendant, regardless of to whom the statement was made, within the possession, custody or control of the State, the existence of which is known to the prosecutor or becomes known to him prior to or during the course of trial[.]

. . .

(f) Statements of State's Witnesses.

. . .

(2) After a witness called by the State has testified on direct examination, the court shall, on motion of the defendant, order the State to produce any statement of the witness in the possession of the State that relates to the subject matter as to which the witness has testified. If the entire contents of that statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

(3) If the State claims that any statement ordered to be produced under this section contains matter that does not relate to the subject matter of the testimony of the witness, the court shall order the State to deliver that statement for the inspection of the court in camera. Upon delivery the court shall excise the portions of the statement that do not relate to the subject matter of the testimony of the witness. With

that material excised, the court shall then direct delivery of the statement to the defendant for his use. If, pursuant to this procedure, any portion of the statement is withheld from the defendant and the defendant objects to the withholding, and if the trial results in the conviction of the defendant, the entire text of the statement shall be preserved by the State and, in the event the defendant appeals, shall be made available to the appellate court for the purpose of determining the correctness of the ruling of the trial judge. Whenever any statement is delivered to a defendant pursuant to this subsection, the court, upon application of the defendant, may recess proceedings in the trial for a period of time that it determines is reasonably required for the examination of the statement by the defendant and his preparation for its use in the trial.

. . .

(5) The term "statement," as used in subdivision (2) [and] (3) . . . in relation to any witness called by the State means

a. A written statement made by the witness and signed or otherwise adopted or approved by him;

b. A stenographic, mechanical, electrical or other recording, or a transcription thereof, that is a substantially verbatim recital or an oral statement made by the witness and recorded contemporaneously with the making of the oral statements.

In *State v. Brown*, 306 N.C. 165, 293 S.E.2d 569, *cert. denied*, 459 U.S. 1080, 74 L.Ed.2d 642 (1982), our Supreme Court made reference to *State v. Hardy*, 293 N.C. 105, 235 S.E.2d 828 (1977), in which the Court "established the rules for our trial courts to follow in instances where a specific request is made at trial for disclosure of evidence in the State's possession that is obviously relevant, competent and not privileged." *Brown*, 306 N.C. at 165-66, 293 S.E.2d at 579. The Court in *Brown* went on to note that Justice Copeland in *Hardy* stated "justice requires the judge to order an *in camera* inspection when a specific request is made at trial for disclosure of evidence in the State's possession that is obviously relevant, competent and not privileged. The relevancy for impeachment purposes of a prior statement of a material State's witness is obvious." *Id.* (Citations omitted.)

We note, pursuant to North Carolina General Statutes § 15A-903(f)(2), the trial judge conducted an *in camera* review of the statements of these witnesses which were in the State's possession. The trial judge determined the portions of the statements relevant to the subject matter had already been provided to defendant. We find that in conducting the *in camera* review, the trial judge should have reviewed these statements of each witness immediately after direct examination. Had the judge found statements which should have been delivered to the defendant for his use, the defendant would have needed those statements for cross-examination. However, our Court, pursuant to North Carolina General Statutes § 15A-903(f)(2), has received the entire text of the statements of these witnesses for review on appeal. Although we find that one page of the grand jury testimony (specifically, grand jury testimony page number 2341) was not contained in the record on appeal as having been provided to defendant, we have reviewed the contents of that page as well as the entire record, and we find the defendant was not prejudiced by the actions of the trial judge.

**[2]** Defendant next argues the trial court erred when it denied defendant's motion to dismiss on the ground the conspiracy charge merged into the trafficking charge, and on the ground there was insufficient evidence presented by the State on both charges.

A conspiracy is an agreement between two or more persons to commit an unlawful act or to commit a lawful act in an unlawful way. *State v. Lowery*, 318 N.C. 54, 347 S.E.2d 729 (1986). It is well established that the crime of conspiracy does not merge into the substantive offense which results from the conspiracy's furtherance and that a defendant may be properly sentenced for both offenses. *State v. Small*, 301 N.C. 407, 272 S.E.2d 128 (1980). "To constitute a conspiracy it is not necessary that the parties should have come together and agreed in express terms to unite for a common object; rather, a mutual, implied understanding is sufficient, so far as the combination or conspiracy is concerned, to constitute the offense. The conspiracy is the crime and not its execution." *State v. Abernathy*, 295 N.C. 147, 164, 244 S.E.2d 373, 384 (1978). An overt act is not necessary to complete the crime of conspiracy; "[a]s soon as the union of wills for the unlawful purpose is perfected, the offense of conspiracy is complete." *Id.*

Defendant argues that because the United States Supreme Court has ruled that a conspiracy charge merges into a continuing criminal enterprise charge, *see Jeffers v. U.S.*, 432 U.S. 137, 53 L.Ed.2d 168, *reh'g denied*, 434 U.S. 880, 54 L.Ed.2d 164 (1977), we should find that the conspiracy in this case has merged with the offense of possession. Defendant argues in *Jeffers*, the Court reasoned that the conspiracy statute and the continuing enterprise statute exist to punish group conduct, which is more dangerous to the public than an individual acting alone; defendant argues this reasoning should be applied herein. We do not find the crimes in this case analogous to those in *Jeffers*. We do note Chief Justice Exum in *State v. Small* wrote that merging the offense of conspiracy into the substantive offense would be proper "were a defendant convicted of the substantive offense solely on the basis of his participation in the conspiracy." *Small*, 301 N.C. at 428, 272 S.E.2d at 141. Again, this does not apply to the facts of this case. Therefore, we find this argument to be without merit.

Further, "[i]t is well-established that the testimony of a co-conspirator is competent to establish a conspiracy[.] . . . In considering a motion to dismiss, the trial court is concerned only with the sufficiency of the evidence, not with the weight of the evidence." *Lowery*, 318 N.C. at 71, 347 S.E.2d at 741 (citations omitted). We find the testimony of co-conspirator Gautier was sufficient to withstand defendant's motion to dismiss on the ground there was insufficient evidence of the charge of conspiracy presented by the State.

[3] Defendant next argues the trial court committed prejudicial error when it denied the defendant's request that the jury be instructed on lesser included offenses.

"The necessity for instructing the jury as to an included crime of lesser degree than that charged arises when and only when there is evidence from which the jury could find that such included crime of lesser degree was committed." *State v. Siler*, 66 N.C. App. 165, 166, 311 S.E.2d 23, 24, *aff'd as modified*, 310 N.C. 731, 314 S.E.2d 547 (1984). "When the State's evidence is positive as to each and every element of the crime charged and there is no conflicting evidence relating to any element, no instruction on a lesser included offense is required." *State v. Hall*, 305 N.C. 77, 84, 286 S.E.2d 552, 556 (1982); *see also State v. Drumgold*, 297 N.C. 267, 254 S.E.2d 531 (1979). Applying these rules to the facts herein, we note the tape of the conversation at defendant's home

on 30 May 1990 contained discussion of the purchase of the quarter kilogram, approximately 250 grams, of cocaine which defendant made from Gautier; thus, no instruction on lesser included offenses was proper.

**[4]** Defendant next contends the trial court erred when it allowed the tape of alleged statements made by the defendant and a transcript of the tape into evidence on the grounds the tape was not properly authenticated, and was acquired by violation of the state and federal constitutional rights of the defendant.

The tape was authenticated pursuant to North Carolina General Statutes § 8C-1, Rule 901 (1992), which reads:

(a) *General provision.* — The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

(b) *Illustrations.* — By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

. . .

(5) Voice Identification. — Identification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker.

Our Supreme Court has stated "[u]nder Rule 901, testimony as to accuracy based on personal knowledge is all that is required to authenticate a tape recording, and a recording so authenticated is admissible if it was legally obtained and contains otherwise competent evidence." *State v. Stager*, 329 N.C. 278, 317, 406 S.E.2d 876, 898 (1991). The facts herein show that at trial, Thompson and Gautier both identified the tape and listened to it, testifying that the tape was a fair and accurate recordation of the conversation they held with defendant. This was sufficient to meet the State's burden of authentication.

We choose not to address defendant's constitutional argument, as this argument was not raised in the trial court.

Finally, we note defendant's remaining argument, that the trial court erred as to the sentence which was imposed on defendant, is meritless. North Carolina General Statutes § 15A-1340.4(f) (Cum. Supp. 1992) clearly states the presumptive prison terms contained within apply "[u]nless otherwise specified by statute[.]" Therefore, the trial judge properly applied North Carolina General Statutes § 90-95(h)(3)(b) (Cum. Supp. 1992).

In the trial of defendant's case, we find no error.

No error.

Judges ORR and McCRODDEN concur.